MONK, Respondent, vs. HURLBURT, Appellant.

*October 8—October 29, 1912.*

*Pleading: Amendment: Parent and child: Stepfather: Liability for necessaries: Services of physician.*

1. Amendment of the complaint to make it conform to the proof was properly allowed after verdict, where the questions embraced in such amendment were litigated on the trial and all of the facts were before the court.
2. A stepfather is liable for the value of medical and surgical services rendered to his stepson, to whom he stood in the position of parent, where a special exigency as to the boy's health existed, requiring the treatment, and the stepfather, knowing the boy's condition and that treatment was necessary and was being furnished, made no objection but so acted throughout as to show approval of what was being done.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

In February, 1910, John Murray, then seventeen years of

age, while attending school at Neillsville, became ill. The plaintiff, a practicing physician and surgeon at Neillsville, was called by Murray's roommate to treat him. In 1901 Murray's mother was divorced from his father. The decree of divorce gave the custody of the child to the mother and ordered the father to pay to her $5 per month during the minority of the child for his support. Murray's father has not made these payments. Five years before Murray became ill, the defendant, who is a farmer residing some miles from Neillsville, married Murray's mother. A couple of weeks after his mother's marriage to the defendant, Murray, then twelve years of age, came to the home of the defendant to live. At the time of her marriage to the defendant Murray's mother had between $300 and $400. She has since received about $100 from her father's estate. Murray was never legally adopted by the defendant.

On the day after Murray became ill he went to the home of a married sister in Neillsville, and while he was there he was treated by the plaintiff. Shortly after Murray became ill the defendant brought his mother to her daughter's home and she remained there to nurse him. Early in March, 1910, a necessary operation was performed on Murray. Another physician assisted the plaintiff in operating. Supplies and medicines for Murray were procured from a drug store and charged to the defendant. Several times during Murray's illness the defendant came from his farm to see him. During these visits he met the plaintiff, but did not direct him to care for Murray or to perform the operation; nor did he object to such treatment of Murray by the plaintiff. When Murray had recovered sufficiently so that his mother's attendance was no longer necessary, she returned to the farm, and when Murray was able he also went there. While he was at the farm the plaintiff called to treat him, and Murray called at the plaintiff's office for treatment. The plaintiff last treated Murray in the month of July, 1910.

The claim of the physician who assisted the plaintiff in the

operation on Murray and the claim for medicines and drugs have been assigned to the plaintiff, and he seeks to recover for them and for his own services on the ground that the defendant stood in the place of a parent to Murray and had occupied the position of a lawful parent to him, particularly with reference to supporting and maintaining him and supplying him with necessaries. The plaintiff kept his account in Murray's name. Some credits on the account were paid by Murray and others, but the defendant has made no payment on any of these accounts. Judgment was rendered in justice's court in plaintiff's favor and an appeal was taken by the defendant to the circuit court.

In addition to the facts above set out the evidence tends to show that the defendant advised with his wife concerning Murray and his education, that he kept no account of the cost of his board and lodging or of any of the articles furnished him, that he permitted him to remain upon the farm and to attend school, that when Murray attended high school at Neillsville he paid grocery bills contracted by him and charged to the defendant, and that he permitted Murray to retain and spend any moneys he earned during vacations. Later he paid Murray for work he did on the farm when he could have earned money elsewhere. The defendant testified that he never asserted or had control of Murray.

The jury returned a special verdict finding that the services and the medicines furnished Murray were necessaries, that the defendant, after Murray came to his home to live with him, treated him as a son, with reference to accepting his services and providing for his support and maintenance up to and including the time when the services were rendered by the plaintiff and the medicines were furnished, and that the plaintiff and the druggist had reasonable grounds for believing that the defendant stood in the position of a parent to Murray and had assumed the obligation of supporting him.

After the rendition of the verdict the court denied defendant's motion to change answers to the questions of the special

verdict, and allowed and permitted an amendment to the complaint alleging that, for more than two years before the services were rendered by the plaintiff and the medicines furnished, the defendant had stood in the place of a parent to Murray, that he had during that time furnished him with board, clothing, and schooling, that he had permitted Murray to obtain goods upon defendant's credit, that he had allowed Murray to make his home with him during school vacations and had accepted Murray's services without compensating him therefor and without keeping account of board, clothing, and other necessaries furnished him, that the rendition of the services and the furnishing of medicines to Murray were necessaries, that the defendant had notice within a few days of the rendering of the services and the furnishing of the medicines and had knowledge that the services were being rendered and the medicines furnished, that the defendant knew that the operation was to be performed, that the defendant furnished Murray with a horse to go from the farm to Neillsville to receive treatment from the plaintiff and to obtain medicines, and that the defendant had never objected to the services being rendered or the medicines furnished, and had not then denied liability therefor.

This is an appeal from the judgment on the verdict.

For the appellant there were briefs by *E. W. Crosby,* attorney, and *R. J. MacBride,* of counsel, and oral argument by *Mr. MacBride.*

*S. M. Marsh,* for the respondent.

SIEBECKER, J. The objection to the amendment of the complaint after verdict, upon the ground that it operated to defendant's injury, is not sustained. It appears that the parties litigated the questions embraced in this amendment at the trial, both before the justice and in the circuit court. By allowing the amendment the court did no more than to conform the pleadings to the proof, pursuant to the provisions

of sec. 2830, Stats. (1898). All the facts embraced in this pleading were before the court. Under such a state of the case the action of the court in no way injured the appellant, was promotive of justice, and is abundantly supported by the adjudications. See the following cases and those referred to therein: *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Kleimenhagen v. Dixon,* 122 Wis. 526, 100 N. W. 826; *Hopkins v. C., M. & St. P. R. Co.* 128 Wis. 403, 107 N. W. 330.

The contention is made that the facts and circumstances shown do not establish defendant's liability for the professional services plaintiff rendered for Murray, defendant's stepson. The facts of the case sufficiently appear in the foregoing statement and need not be repeated. The jury found that the defendant stood in the position of parent to his stepson, that plaintiff had reasonable grounds for believing that this relation existed, that the defendant had assumed the obligation of providing the boy with necessaries, and that a special exigency as to the boy's health existed requiring medical and surgical treatment. It is manifest that the defendant was fully apprised of the boy's sick condition, that he understood such treatment was necessary, that he knew it was being furnished by the plaintiff, that he interposed no objection thereto, and that he so acted throughout the period of the boy's illness as to show approval of plaintiff's course in rendering the services. Under this state of the facts the defendant's liability for the value of the services rendered by the plaintiff is fully established, within the principle that the law implies a promise where a parent, with full knowledge of the facts and without objection, allows and approves of his child being furnished with necessaries. We consider the instant case to be within the rule approved in *McGoon v. Irvin,* 1 Pin. 526, and *Zilley v. Dunwiddie,* 98 Wis. 428, 74 N. W. 126.

The claim that the court erred in not incorporating defendant's requested questions in the special verdict is not sup-

ported.   The court practically adopted defendant's question relating to the existence of a special exigency for furnishing medical services.   The verdict fully covers all the inquiries suggested by the rejected questions and embraces the litigated issues in the case.

We have examined the exceptions cited to our attention to rulings on evidence and to instructions given the jury.   They are not of sufficient importance to require restatement here. No prejudicial error was committed as regards them.

*By the Court.*—The judgment appealed from is affirmed.