MADISON GENERAL HOSPITAL, Plaintiff-Appellant,

v.

Bruce A. HAACK and Debra Hughes Haack,
Defendants-Respondents,

Donald J. HUGHES, Defendant.

Supreme Court

*No. 83–1595. Argued April 30, 1985.—Decided June 24, 1985.*

(On certification from the court of appeals.)
(Also reported in 369 N.W.2d 663.)

For the plaintiff-appellant there were briefs by *John Walsh, Steven J. Schooler* and *Brynelson, Herrick, Gehl & Bucaida,* Madison and oral argument by *Mr. Schooler.*

For the defendants-respondents there was a brief by *Joseph F. Preloznik* and *Preloznik & Associates, S.C.,* Madison, and oral argument by *Joseph F. Preloznik.*

SHIRLEY S. ABRAHAMSON, J.  This appeal from a judgment of the circuit court for Dane County, Richard W. Bardwell, circuit judge, is before the court on certification by the court of appeals pursuant to sec. 809.61, Stats. 1983–84.

Madison General Hospital, the plaintiff, sued Debra Haack (nee Debra Hughes), Bruce Haack (Debra Haack's husband), and Donald J. Hughes (Debra Haak's father) for $2,319.08, the unpaid balance of a hospital bill totaling $4,613.91. This unpaid balance was for medical services rendered to Debra Haack in connection with the birth of her infant. Medicaid had paid the portion of the bill directly related to the care of the infant. The suit against Donald J. Hughes was dismissed for failure to obtain service.

The issue presented is whether either Debra Haak, who was an unwed minor at the time the medical expenses were incurred, or Bruce Haack, who is the father of the infant and was an unwed adult at the time the medical expenses were incurred, or both are liable for the hospital charges for the medical care of Debra Haack relating to the delivery of the infant by caesarean section and relating to postoperative treatment.

The circuit court dismissed the claim against Debra Haack, stating,

"At the time Debra received the medical services in question, she was a dependent as defined by sec. 49.01

(4), Wis. Stats. Consequently, the hospital had a cause of action against both Mr. & Mrs. Hughes for the necessary medical costs incurred by their dependent daughter. Section 52.01(1) Wis. Stats. The hospital for one reason or another failed to fully pursue its claim against the parents and now seeks recovery against the minor daughter who never, in the court's view, impliedly agreed to pay the bill and certainly never consented to make payment after she attained her majority."

We affirm this part of the judgment.

The circuit court also dismissed the action against Bruce Haack, holding that "Mr. Haack cannot be held responsible for Debra's medical expenses incurred before the marriage . . ." since "[u]nder Wisconsin law . . . marriage, which here occurred after the birth of the child, does not make a husband liable for his wife's prenuptial obligations." We reverse this part of the judgment.

The facts giving rise to this appeal are undisputed. When Debra Hughes, accompanied by her mother, was admitted to the hospital on February 3, 1976, she was 16 years old, apparently was living with her parents, and had no financial assets of her own. She was 34 weeks pregnant and suffering from severe labor convulsions. She delivered the infant by caesarean section on February 16, 1976, and, after postoperative treatment, was released on February 22, 1976.

On April 12, 1976, Bruce Haack and Debra Hughes (hereafter referred to as Debra Haack) were married. Pursuant to sec. 245.25, Stats. 1975, the child "thereby became legitimated and enjoy[ed] all the rights and privileges of legitimacy" as if the child had been born during the marriage of the parents. See also sec. 767.60, Stats. 1983–84.

The hospital attempted to collect from Medicaid the cost of the delivery and the cost of the care of Debra Haack, but Medicaid covered only the costs associated with care of the infant. The hospital then attempted

to collect the remainder of its bill from Donald J. Hughes's health insurer. The insurer did not pay. The hospital then commenced this action to collect payment from Debra Haack, Bruce Haack, and Donald J. Hughes. The hospital did not commence action against Dorothy Hughes, Debra Haack's mother. The hospital never served Donald J. Hughes, and the suit against him was dismissed.

We will consider first Debra Haack's liability for the remaining portion of the hospital bill and then Bruce Haack's liability. Since Debra Haack's father was not served with the summons and complaint and Debra Haack's mother was not named as a defendant, the liability of Mr. and Mrs. Hughes for the medical expenses in question is not directly before the court. Mr. and Mrs. Hughes's liability is, however, relevant to a determination of Debra Haack's liability and will be considered in that context.

*Debra Haack's liability.* The hospital urges several theories under which Debra Haack may be held liable for payment of the medical expenses. First, the hospital asserts that Debra Haack is liable under the common law doctrine that when a minor contracts for necessaries, the minor cannot disaffirm the contract. *See* E.A. Farnsworth, *Contracts* sec. 4.5, p. 221–23 (1982); 2 S. Williston, *A Treatise on the Law of Contracts,* sec. 240, p. 51 (3d ed. 1959); J.D. Calamari & J.M. Perillo, *The Law of Contracts,* sec. 128, p. 215 (1970). *Cf. Halbman v. Lemke,* 99 Wis. 2d 241, 244–45, 298 N.W.2d 562 (1980); *Kiefer v. Fred Howe Motors, Inc.,* 39 Wis. 2d 20, 23, 158 N.W.2d 288 (1968); *Schoening v. Gallet,* 206 Wis. 52, 54–55, 238 N.W. 852 (1931). Emergency medical services are generally considered necessaries, and this point is not in dispute in this case.

For Debra Haack to be liable under this "doctrine of necessaries," she had to have entered into a contract, express or implied in fact, to pay for the medical ser-

vices. Neither party cites Wisconsin case law, and we could find none, declaring a minor liable for emergency health care service provided the minor in the absence of the minor's contracting for the service. The common law rule appears to be that a minor is not liable if necessaries were furnished to the minor on someone else's credit. [1]

The circuit court found that Debra Haack did not enter a contract with the hospital for her medical care. The circuit court characterized Debra Haack's testimony as follows: "At the trial Debra testified without contradiction that she herself was indigent, that she was very ill when she entered the hospital and in no condition to agree to anything. In other words, she states that she *in no way ever impliedly agreed to pay the*

[1] *See, e.g., Gaston v. Thompson,* 129 Ga. 754, 59 S.E. 799 (1907) (minor not liable because services were given on the credit of the father); *Potter v. Thomas,* —— Misc. ——, 164 N.Y.S. 923 (N.Y. App. Term 1917) (minor not liable in part because services were not provided on her credit); *Foster v. Adcock,* 161 Tenn. 217, 30 S.W.2d 239 (1930) (contract was implied by law to the father and mere inability of father to pay will not bind the minor).

*Cf. Jewell v. Schmidt,* 1 Wis. 2d 241, 250, 83 N.W.2d 487 (1957). The *Jewell* court noted that in the absence of the establishment of an express contract between the wife and the person rendering the service, the husband, not the wife, was liable for the services rendered to the wife and was the person entitled to reimbursement for these expenses. Language which retained the legal immunity of a married woman with regard to services furnished the wife for which the husband is liable under the doctrine of necessaries was subsequently withdrawn in *In re Estate of Stromstead,* 99 Wis. 2d 136, 143–44, 299 N.W.2d 226 (1980). For a discussion of the doctrine of necessaries applicable to husband and wife, see Note, *The Unnecessary Doctrine of Necessaries,* 82 Mich. L. Rev. 1767 (1984). In the present case, Debra Haack's immunity from liability for necessaries stems from her status as a minor at the time the medical expenses were incurred, not from her being female.

*medical bill."* In light of the circuit court's finding that the minor did not enter into an express or implied in fact contract, we conclude that the common law doctrine that a minor may be liable for necessaries furnished on the credit of the minor is not applicable here.

The essence of the hospital's argument is that Debra Haack is liable for the medical expenses under a theory of unjust enrichment, that is, a quasi-contractual obligation imposed by law.[2] Express contracts and contracts implied in fact rest on the assent of the parties; a quasi-contractual obligation does not. A quasi-contractual obligation is imposed by law on grounds of justice and equity to prevent unjust enrichment. *In the Matter of the Estate of Stromstead,* 99 Wis. 2d 136, 139, n. 1, 142, n. 5, 299 N.W.2d 226 (1980). The law may require a person enriched by a benefit to compensate the person furnishing the benefit when it would be inequitable to allow retention of the benefit with payment. *Titus v. Polan,* 72 Wis. 2d 23, 25, 240 N.W.2d 420 (1976) ; *Nelson v. Preston,* 262 Wis. 547, 549–50, 55 N.W.2d 918 (1952). *See* Restatement (Second) of Restitution sec. 3, comment (Tentative Draft No. 1, 1983).

The hospital asserts that Debra Haack received medical care necessary to save her life and the life of her infant; that she knew and appreciated that such care was necessary; that she accepted the care which the hospital was required to render,[3] and that she has refused to pay for these benefits. These facts, argues the hospital, satisfy the elements of a cause of action in equity

[2] Although the hospital separates, as do we, the minor's liability under a contract for necessaries from a theory of unjust enrichment, we would note that the doctrine of necessaries (as applicable to the child and as applicable to other members of the family) and the exceptions to the doctrine rest on principles of unjust enrichment.

[3] *See Mercy Medical Center of Oshkosh, Inc. v. Winnebago County,* 58 Wis. 2d 260, 268, 206 N.W.2d 198 (1960).

for unjust enrichment. *See Puttkammer v. Minth,* 83 Wis. 2d 686, 688–89, 266 N.W.2d 361 (1978).

The hospital's theory of Debra Haack's liability under the doctrine of unjust enrichment, however, overlooks the fact that when a minor has not contracted for necessaries, the law has traditionally imposed a quasi-contractual liability on a minor's father, not on the minor, under the doctrine of necessaries. In *Monk v. Hurlburt,* 151 Wis. 41, 45, 138 N.W. 59 (1912), this court stated that "the law implies a promise [that a parent will pay] where a parent, with full knowledge of the facts and without objection, allows and approves of his child being furnished with necessaries." *See also Hoard v. Gilbert,* 205 Wis. 557, 559, 238 N.W. 371 (1931). A parent's quasi-contractual obligation, under the doctrine of necessaries, arises because a third party has fulfilled the legal obligation of the parent to support the minor. Traditionally the law imposed the duty of support for the minor on the male parent. Today the wife shares with the husband the legal duty of support for the family. *In re Estate of Stromstead, supra,* 99 Wis. 2d at 143 (citing sec. 767.08, Stats. 1983–84).

In this case Mr. and Mrs. Hughes were under a duty to provide their daughter with medical services. Mrs. Hughes knew that Debra Haack needed medical attention, accompanied her to the hospital, consented to the medical procedures by signing a form authorizing treatment, and knew that the hospital would expect payment for the services. Aside from this authorization of treatment, no express agreement exists between the hospital and Mrs. Hughes, Mr. Hughes, or Debra Haack. Under the common law doctrine of necessaries, the party or parties unjustly enriched by the medical care provided Debra Haack and liable for payment of the medical expenses appear to be one or both of Debra Haack's parents. *Cf. Greenspan v. Slate,* 12 N.J. 426, 97 A.2d 390

(1953). Dorothy Hughes (and perhaps Donald J. Hughes), not Debra Haack, may thus be liable on a quasi-contractual, unjust enrichment theory under the doctrine of necessaries. *Cf. Sharpe Furniture, Inc. v. Buckstaff,* 99 Wis. 2d 114, 120, 299 N.W.2d 219 (1980).

The hospital, however, asserts that Debra Haack is liable for payment for medical services because her parents defaulted in paying for the medical services. As authority for this proposition, the hospital cites 43 C.J.S. Infants sec. 181 at 485–86 and 42 Am. Jur. 2d Infants sec. 72 at 74–75. Several cases cited as authority for this proposition of law are collected in Annot., *Liability of Infant for Medical, Dental or Hospital Services to Him,* 71 A.L.R. 226 (1931), and Annot., *Liability of Infant for Necessaries Where He Lives with His Parents,* 70 A.L.R. 572 (1931), and supplements thereto. The cases, however, are not clear in their statement of this rule or its application.[4]

A key case placing liability on the minor when the father defaults is *Cole v. Wagner,* 197 N.C. 692, 150 S.E. 339 (1929). In *Cole* the court said that "[t]he father did not provide this attention necessary to save his life and usefulness; the hospital did. The infant now has an estate, and it is unthinkable that the guardian of the infant should not pay the reasonable expense for saving the child's life and usefulness." 130 S.E. at 341. In *Cole* the child had recovered a judgment for $4,500, in which it was alleged that "the hospital, medical, and surgical

---

[4] In *Gardner v. Flowers,* 529 S.W.2d 708 (Tenn 1975), for example, the Tennesee court purported to be following "what appears to be" the majority rule holding "that the inability of parents to pay for essential medical treatment for an infant renders such treatment a necessary for which the infant is liable." The cases the *Gardner* court cites for this proposition, however, generally deal with the failure of the person seeking recovery against the minor to prove the parents' inability to pay or with cases in which the minor's estate includes a reimbursement for medical expenses.

treatment rendered . . . was a material and substantial consideration . . . ." *Id.* As a result of this aspect of the *Cole* case, courts may view the *Cole* rule as applicable only to situations in which the child's estate consists of damages which include recovery for medical and hospital expenses. *Greenville Hospital System v. Smith*, 269 S.C. 653, 239 S.E.2d 657 (1977); *Lane v. Aetna Casualty & Surety Co.*, 48 N.C. App. 634, 269 S.E.2d 711 (1980) *rev. denied* 302 N.C. 219, 276 S.E.2d 916 (1981). *But see Bitting v. Goss*, 203 N.C. 424, 166 S.E. 302 (1932).

Although courts suggest that a minor may be liable for necessaries if a parent defaults in payment, these courts frequently refuse to hold the minor liable, determining that the proof of the parent's neglect, failure, refusal, or inability to pay is insufficient.[5]

Even if we were to conclude that a minor should be liable for medical expenses when a parent neglects, fails, refuses, or is unable to pay, we would conclude that the record in this case is insufficient to establish the parents' neglect, failure, refusal, or inability to pay. There is no evidence that the hospital ever sought payment from Mrs. Hughes. With regard to Mr. Hughes we know only that he apparently resided at the same address as Debra Haack at the time the medical services were rendered, that the hospital was unsuccessful in collecting payment from his health insurer, that the hospital may have mailed some bills to him, that he apparently left Wisconsin after the infant's birth, and that the hospital filed suit more than four years after the medical services had been rendered and failed to obtain service on him.

[5] *See, e.g., Siegel v. Hodges,* 15 App. Div. 2d 571, 222 N.Y.S.2d 989 (1961); *Stetson v. Russell,* 130 Misc. 713 (N.Y. App. Term 1927); *Hoyt v. Casey,* 114 Mass. 397 (1874); *Poole v. Wilkenson,* 42 Ga. 539 (1870).

On the basis of this record, we conclude that Debra Haack is not liable to the hospital for the medical services furnished to her. She was not a party to an express contract or to one implied in fact and therefore any rules regarding a minor's liability under a contract for necessaries are inapplicable. Her parents, not she, would be liable under the common law doctrine of necessaries or unjust enrichment. Although some jurisdictions may impose liability on a minor when a parent does not meet the obligations imposed upon them by law under the doctrine of necessaries, the record in this case does not justify allowing recovery from Debra Haack under this theory.

There is a sense of uneasiness attached to following traditional common law and concluding that Debra Haack need not pay for the medical services she received. She appears to be profiting at the expense of the hospital, which did its best for her welfare. We expressed a similar uneasiness in a prior holding that a minor who disaffirms a contract for the purchase of an item which is not a necessary may recover the purchase price without liability for use, depreciation, damage or other diminution in value. *Halbman v. Lemke,* 99 Wis. 2d 241, 251, 298 N.W.2d 562 (1980). We recognize that the laws relating to the capacity of infants to contract balance society's interests in protecting the minor and the family against interests in protecting innocent creditors. Similarly the doctrine of necessaries and the various exceptions thereto make this balance. We have been unwilling to modify the traditional rules governing infants' contractual liability, saying modification is best left to the legislature. *Halbman, supra.* We similarly conclude in this case that the balance made in the common law rules regarding the immunity and the quasi-contractual liability of a minor for necessaries should not be modified at this time.

*Bruce Haack's liability.* We turn now to the question of Bruce Haack's liability for the medical expenses incurred by Debra Haack at the time of the birth of the infant. Presented with the hospital's accounting and the nature of the Medicaid reimbursement, the circuit court found that the expenses at issue were for the care of Debra Haack, and not for the care of the infant.

Bruce Haack argues that these medical expenses are antenuptial debts for which he is not liable. Sec. 246.08, Stats. 1975 (renumbered sec. 766.08, Stats. 1983–84), provides that "[m]arriage does not render the husband liable for the payment of the wife's antenuptial debts; but she shall be liable to all remedies for the recovery of such debts to be enforced against her and her separate property as if she were unmarried."[6]

We conclude that Debra Haack's medical expenses for the delivery of her infant and for her postoperative care are not antenuptial debts as that phrase is used in sec. 246.08. "Antenuptial debts" in sec. 246.08 appears to refer to debts incurred by a woman prior to marriage for which the unmarried woman was liable. Sec. 246.08 provides that the woman remains liable for the debts after her marriage. As we explained previously, the medical expenses in question in this case were not Debra Haack's debts which could be enforced against her and her separate property before she was married. Because Debra Haack was a minor, her medical expenses do not fit within the framework of a wife's antenuptial debts set forth in sec. 246.08. We therefore need not decide in this case whether sec. 246.08 would have relieved Bruce Haack of liability had Debra Haack been an adult when the medical expenses were incurred.

---

[6] This statute changes the common law. The reason for holding the husband liable for antenuptial debts ceased when the legislature authorized the wife to retain her property on marriage and to retain her own earnings after marriage. *See* ch. 155, Laws of 1872; *Platner v. Patchin,* 19 Wis. 353, *333 (1865).

Since Bruce Haack is not released from liability by sec. 246.08, the issue is whether there are any grounds under which liability may be imposed on him for Debra Haack's medical expenses. In deciding this question we consider two fact situations that "might have occurred," and the legal consequences that would have followed from each of them. First, Bruce and Debra Haack might have married prior to the birth of their infant. In this event, Bruce Haack probably would have been liable for the expenses under the doctrine of necessaries. As this court stated in *In re Estate of Stromstead,* 99 Wis. 2d 136, 143, 299 N.W.2d 226 (1980),

"When a creditor proves that a commodity or service which is suitable and proper for the family and reasonably needed by it has been supplied to and used by the family without payment for the item, he has demonstrated the elements necessary for recovery under a theory of quasi-contract for unjust enrichment."

The public policy underlying the doctrine of necessaries is concern for the support and the sustenance of a family and the individual members thereof. *Sharpe Furniture, Inc. v. Buckstaff,* 99 Wis. 2d 114, 119–20, 299 N.W.2d 219 (1980).

Second, Bruce Haack and Debra Hughes might not have married, in which case Debra Hughes could have instituted paternity proceedings against Bruce Haack. In 1976 the circuit court would have been required to order Bruce Haack "to pay all expenses incurred for lying-in and attendance of the mother during pregnancy. . . ." Sec. 52.37(1), Stats. 1975.[7] Sec. 52.37(1) was

---

[7] Sec. 52.37(1), Stats. 1975, provided in pertinent part:

"If the defendant is found the father of the child, or admits the truth of the allegation, or enters into a settlement agreement, he shall be adjudged to be the father of such child, unless paternity is denied in such settlement agreement, and shall be ordered to pay all expenses incurred for lying-in and attendance of the mother during pregnancy. . . ."

repealed and recreated as sec. 767.51. (Laws of 1979, ch. 352, secs. 11, 45.) Sec. 767.51 (3) provides that "the judgment or order may direct the father to pay or contribute to the reasonable expenses of the mother's pregnancy and confinement during pregnancy. . . ."[8] The public policy underlying these paternity statutes is that the father of the infant should bear responsibility for expenses incurred as a result of a pregnancy in which he participated.

Considering the policies underlying both the doctrine of necessaries and the paternity statute, we conclude that it would be inequitable and against public policy to allow Bruce Haack to escape liability for Debra Haack's medical care arising from her pregnancy merely because the marriage took place after the birth of the infant instead of before the birth.

Bruce Haack raises several objections to relying on sec. 52.37 (1), Stats. 1975, or sec. 767.51 (3), Stats. 1983–84, to decide the present case. First, Bruce Haack points to the discretionary nature of the court's order under sec. 765.51 (3) that the father pay the expenses of childbirth. Second, he argues that the "hospital cannot rightly claim that the responsibilities owed [the mother] through the narrowly defined proceedings of paternity actions are owed to it as well, when the hospital itself could in no way initiate such proceedings." Brief of respondents-defendants at 12. Third, he argues that the statute furnishes the exclusive procedure for the creation of an enforceable obligation of the father.

Since the present case does not directly involve paternity proceedings, we do not rely on the express provisions

---

[8] Sec. 767.51 (3), Stats. 1983–84, provides in pertinent part:

"The [paternity] judgment or order shall specifically assign responsibility for payment of the child's medical expenses. The judgment or order may direct the father to pay or contribute to the reasonable expenses of the mother's pregnancy and confinement during the pregnancy. . . ."

of sec. 52.37(1) or sec. 767.51(3).[9] Rather, we have looked to the policy underlying these statutes. We merely conclude that it is consistent with the policy declared by the legislature in the present and prior paternity statutes to hold Bruce Haack liable for the expenses associated with the birth of his child. We also conclude that it is consistent with the doctrine of necessaries to hold Bruce Haack liable for the medical expenses in this case. Clearly a benefit has been conferred upon Bruce Haack. It would be inequitable if he were not obliged to compensate the hospital for the services rendered to the mother of his infant.

For the reasons set forth, we affirm the judgment of the circuit court dismissing the claim against Debra Haack, and we reverse the judgment of the circuit court dismissing the claim against Bruce Haack. We remand the cause to the circuit court for entry of judgment in accordance with the opinion.

*By the Court.*—Judgment affirmed in part and reversed in part; cause remanded.

---

[9] Compare *Hacker v. Anonymous,* 163 Misc. 832, 299 N.Y.S. 460 (City Court Albany, 1937). In that case a physician sued the defendant to recover for professional services rendered the defendant's wife before the marriage of the defendant and his wife during her pregnancy with the defendant's child. The defendant contended that he was not liable because he never authorized the services, and, not being married at the time, he disclaimed liability for her expenses and confinement, even though he was responsible for her condition. The New York court acknowledged that ordinarily a husband is not liable for necessaries furnished his wife prior to the marriage. Nevertheless, the court held the defendant liable for expenses, relying on a New York statute making the father liable to pay the expenses of the mother's confinement and recovery.